The next case on for argument is United States v. Vila. Good morning, Your Honor. May it please the court, John Sarando from Syracuse, New York, on behalf of the appellant. And I have two minutes for rebuttal, I believe, Your Honor. Yes, you do, Mr. This is an appeal from a judgment of conviction for the crimes of conspiracy to commit theft from interstate shipment and theft from interstate shipment and interstate transportation of the stolen property. The restitution was awarded in the amount of $60 million. And the sentence was concurrent with the sentence in Florida. Basically, pharmaceuticals were stolen in Connecticut and then taken to Florida for sale. And the defendant was convicted in Florida of conspiracy to sell those goods, as well as possession of the stolen goods. The first issue we'd like to discuss today relates to the, I think, the effective assistance of counsel. Counsel, we couldn't grant what you're looking for without hearing from the counsel who was allegedly ineffective. So, it appears that you're in a position where we can't grant you relief for ineffective assistance of counsel, we could only deny it. The usual remedy for ineffective assistance is 2255. Do you really want us to consider a claim that we can only reject and not grant? Well, I think on this record, the determination of the district court that counsel was not disqualified can be reviewed because they had a hearing which was, they tried to have a hearing, but they never heard from the counsel as to what actually transpired with the other individual who was not her client. And that individual should have proceeded to have been required to testify at that hearing and the court could order a new hearing in that regard at the district court level. Because the hearing that they had was totally inadequate. Or we could not address this issue and let it be raised in a 2255 proceedings. That's true, yes. You would agree with that or? Yes, you could do that as well, obviously. Wouldn't you prefer that? So the record can be developed as Judge Codal was referring to earlier? Well, for the record to be developed, I think, I don't know what else could be added. Because- Counsel's response to the allegations or to the suggestion that counsel was ineffective. And- Well, the- Decisions were made or however that sugars off once- Well, but the problem you have in that regard is that the concern was counsel's disqualification or something in regard to whether or not those conversations were appropriate. And there was no, the inquiry was superficial because that counsel never answered the questions that the judge was asking her. And I think that's the problem you have with the record. I don't know what else you could expand on when you have a hearing on the specific issue that we're raising, and was the hearing adequate? And we submit that the hearing was not adequate. And I don't know what else we could add, because they did have a quote, as far as they thought, a full hearing. And the concern was, was there something inappropriate that caused the defendant to plead guilty? And the defendant, once the judge heard that the defendant wanted to keep his plea, he sort of moved on, and you never heard from the individual who should have said what the conversation was, who was the man behind the scene at the individual in Florida. In addition, insofar as the guilty plea is concerned, we submit that the court never fully indicated that restitution was going to be involved in such a large amount. At the time of the plea, I think the phrase was, there may be restitution. It'll be taken up at time of sentencing, and the amount of loss will be brought up at time of sentencing. And as we know, the amount of the loss also impacted the guidelines. And insofar as the amount of the loss is concerned, or the amount that the restitution was set for, it was shown that Lily, the alleged victim, or the victim, indicated civilly that their loss was 46 million. Counsel, the rule doesn't require that the judge at the plea explain the amount of possible restitution. And it's often difficult for the judge to know at the time of the plea what the amount of restitution is. It's a matter that's subject to dispute and finally has to be decided at sentence. How could there be error in the district court not explaining what the amount of possible restitution is at the time of the plea? When he says, I think when she said, there may be restitution. I think that was, on this record and what happened, I think that was somewhat misleading, there may be, it's something we'll talk about at sentencing. When you're talking about such vast numbers, I think there should have been a little more given at the time of the plea. What do we tell district court judges who are taking pleas that they need to set? Restitution will be imposed and the amount could be substantial. And in this case, the amount could be substantial and the amount of the restitution could impact the sentencing guidelines and which could affect your ultimate sentence. And I think that type of knowledge- That's not a requirement of rule 11, at least using the- No, but I think the question was, what should we tell them? Yes, what should we tell them? And the double jeopardy, I think you have a situation where there was only one thing they could do with what they stole, and that was to sell it. And it seems like everything should have been at one time and one place rather than two separate prosecutions for conspiracy to steal it, transport it, sell it. Counsel, I understand your argument on the two conspiracies being a double jeopardy problem. I didn't see a response in your reply brief with respect to the two substantive counts. The substantive count in Connecticut and the substantive count in Florida. One was theft from an interstate shipment in violation of section 659. The other was possession of stolen property in violation of section 2315. Are you not contending that those two statutes, the prosecution of those two statutes was a violation of double jeopardy? To steal it, you gotta possess it. I would say that they are- They're separate. No, I don't think they'd be separate, because if you steal it, you gotta possess it. And that's just a simple answer, Your Honor. And I'll save the rest of my time for rebuttal, if appropriate. You have two minutes, Mr. Serrano, so thank you. Ms. King? Thank you, Your Honor. Anastasia King on behalf of the United States. Your Honors, the conviction of the district court, the judgment should be affirmed in this case, because the district court committed no error in accepting the defendant's pleas after a thorough and careful colloquy where the district court ensured that all of the elements for the offenses to which Mr. Villa was pleading were in fact met. Also, these convictions did not violate the double jeopardy clause. This, too, was litigated below, and the district court wrote out in a very careful opinion, that is 13 pages, why it is that these convictions do not violate the double jeopardy clause or create a multiplicity problem. I'd like to go back to the plea for just a moment. So how can we say that the plea was really knowing and voluntary, since there was so little warning about the enormous restitution obligation that lay on the horizon? Well, the plea was, under the law, in order to be knowing and voluntary under Rule 11, what's required is that the defendant be warned of the court's authority to order restitution. But in addition to that, prior to the entry of the plea, there had been substantial filings and substantial litigation, including filings at docket entries 119, 120, and 121, which laid out the four potential loss figures that were ultimately litigated throughout, and became the main subject of sentencing. But also, the fact that restitution is relevant, how each of those might relate to restitution. In particular, the pleading at 121 indicated that while there's a market value price of $80 million that could be applied to these convictions, that's the wholesale price charged by Lilly, there's also the $60 million figure, which is what they ultimately would have received at the end of the day once the discounts were applied. And that pleading particularly advised that that may be more relevant for restitution than the price ultimately charged as an initial matter by Lilly. You'd say there's a minimal legal obligation to give an order of magnitude, but that in fact the order of magnitude should have been known to the defendant based on the government's filings? Is that right? I'm saying that it may not be a bad idea for district judges to give an idea of magnitude, but in this case, I don't think that the defendant had no idea of the order of magnitude leading into the pleas that were after many months of intense litigation. That included litigation about these lost figures. I mean, there's no question but that he was warned or advised that there would be a restitution component that was required under the law, right? Yes, the court specifically advised that the 3663A, the mandatory restitution provision of the statute. That's the mandatory statute for restitution. He was advised that the court may impose restitution and has the authority to impose restitution under that statute. So it was clearly stated on the record during the plea colloquy. Counsel, you argue that the argument of double jeopardy was waived as a result of the plea. Is that right? We do argue that, your honor. And we- Do you think that the Supreme Court's decision this past term in class about what is waived and not waived has any effect on your argument? Well, your honor, in class, the Supreme Court recognized that Brose is still valid law. So the Supreme Court in class talked about Mena and Blackledge and made their decision, rendered their opinion based on what had happened in Mena and Blackledge. They recognized also that Brose had been decided and left Brose alone. And the differentiation between those two categories, even though double jeopardy is discussed in both of them, is that what they said is that Mena and Blackledge are the indictments and the record, whereas Brose, the defendant had pleaded guilty to two distinct conspiracies, factually admitted all the alleged allegations, and that you would need to go beyond the face and contradict what's on the face of those indictments in order to find a double jeopardy. I would submit that in this case, what we have, the facts are more akin to Brose than they would be necessarily to Mena and Blackledge. So we are, we- You're still holding to that argument despite- We are, but the court doesn't need to find waiver in order to find that there was no double jeopardy, because on the merits, the claims fail. The double jeopardy analysis is accurate, I mean, is correct. That's what I meant to say, Your Honor, exactly. In addition, the district court properly calculated the loss in this case. The district court properly calculated the loss was in the $50 million to $100 million range, based on the evidence that it had before it, and its careful analysis of that evidence, and all of the potential flaws that the defense raised with regard to those numbers. But ultimately, the court followed what the guidelines required, which is to make a reasonable estimate of the fair market value of the unlawfully taken property. And that's what the court did based on that, recognizing that there may be flaws, but the variance would have to be more than 17%. And the court didn't feel that, based on the analysis and all of the evidence that was before it, that there was a reason to believe that there was more than a 17% variance in that, that would justify going below the $50 million floor. Counsel, the award of restitution was somewhat in excess of 60 million. Was there a separate page that listed the victim? I didn't see it. No, your honor. The restitution is part of the judgment, and it is just the amount. It doesn't specify the order and the amount to which how much goes to the victim and how much goes to the indemnifier. Under the operation of section 3664J, that requires that once the victim is made whole, then the remaining amount would go to the indemnifier. The district court certainly retains the jurisdiction to be able to make an entry or clarification to that effect. There's no separate page listing the victims and the amounts and the proportion? That's correct. Could you address your adversary's argument that the indictment was multiplicitous, and its convictions are multiplicitous because you can't really separate the theft from the possession. That you have to possess in order to have stolen, and therefore there's an untenable overlap in the crimes that were charged. Certainly, your honor. The state of the law that's applied to a multiplicity analysis is Blockberger. And that was the state of the law that we returned to, the Supreme Court returned to, in 1993 with Dixon. And with that, we look at the elements, and it is a strict application of the elements. And so, because the 659 convictions here, which were theft from an interstate shipment convictions, require proof of an element. That the 2315 conviction in Flora did not require, and vice versa. 23 required something that 659 did not. There isn't a multiplicity problem. There was some old case law that adhered to that theory. But since Dixon, and in that wakes in 1996, it was recognized that these two particular statutes are not multiplicitous. That was the first circuit that recognized that in Black. And so, it has been recognized that stealing from an interstate shipment, which is what happened in Connecticut, is not the same as Possessing stolen goods that had previously moved across the state line. And so, under Blockberger and the state of the law, there isn't a multiplicity violation. Thank you. And finally, with regard to the ineffective assistance claims, the government certainly would recognize what the court has recognized. Which is that, not only have we not heard from defense counsel, who was alleged to have provided ineffective assistance to counsel, but by the own words of the defendant, saying that he did not want to withdraw his plea, that he was still affirming his guilt. That he wanted to remain represented by his retained counsel. All of those statements that he made on the record, and through independent counsel, who spoke to him in his own language, and then relayed his statements and conversations with the court. Those cannot, the defendant appellant can't show, at a minimum, the second prong of the ineffectiveness standard under Strickland. That is that he would have not pleaded guilty. The result would have been different. And so for all of those reasons, the judgment of the court should be affirmed, and the convictions should stand. Would you agree that we don't have to reach the ineffective assistance of counsel and substance, specifically not decide it and let it proceed on a 2255? Yes, I would, Your Honor. Thank you, Ms. King. Mr. Serando, you've reserved two minutes. Yes, Your Honor, thank you. Very briefly, when counsel indicated that the amount of the restitution was appropriate, she used figures of well in advance of the figure that the victim itself had indicated was their loss. Which was $46 million in a civil lawsuit, which amount was pointed out to the district court. We submit that anything above $46 million is inappropriate, incorrect, and should not be the amount of the restitution, since they have agreed that that was the amount of their loss in that regard. So was the entry of that order challenged below? Yes, Your Honor, yes, I think defense counsel came up with the $46 million figure at the time of the sentencing proceeding. Not the government, which the government still doesn't acknowledge that amount for some reason. And in regard to the multiplicious, I think one thing was left out, it was theft and possession in transportation by the same defendant. In that regard, and insofar as the, I hate to, getting back to the restitution, the amount, I just think that on this record there should have been some indication that substantial restitution would be involved. And concerning counsel, I think the concern of the district court would have been that the, is there something wrong that happened in Florida that caused the defendant to plead guilty? And the question would be, and he still retained, wished to retain that guilty plea, which, and we submit that that in and of itself was incorrect. And thank you for the opportunity. Thank you. Thank you both. We'll reserve decision in this case.